# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STEVEN E. LASITER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.   CIV-11-416-RAW-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Steven E. Lasiter requests judicial review pursuant to 42 U.S.C. §

405(g) of the decision of the Commissioner of the Social Security Administration

("Commissioner") denying his application for benefits under the Social Security Act.

The claimant appeals the decision of the Commissioner and asserts that the

Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the

reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the

Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§

404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42

U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the

decision was supported by substantial evidence; and, second, whether the correct legal

standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)

[citation omitted]. The term substantial evidence has been interpreted by the United

States Supreme Court to require "'more than a mere scintilla. It means such relevant

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 21, 1957, and was fifty-three years old at the time of the administrative hearing (Tr. 80). He earned his high school diploma and completed one year of college (Tr. 28). The claimant has past relevant work as a distribution coordinator in manufacturing (Tr. 18). The claimant alleges that he has been unable to work since July 15, 2008 because of a narrowing of the cerebral artery, diabetes, back problems, disorientation, memory loss, vestibular disorder, swelling of the heart, arthritis, mini-strokes, sleep apnea, neuropathy, and oscillopsia (Tr. 161).

## Procedural History

On November 12, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 11). The Commissioner denied his application. ALJ Trace Baldwin conducted the administrative hearing and found that the claimant was not disabled in a written opinion dated July 28,

2010.  (Tr. 11-20).  The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: i) no pushing/pulling (including the operation of hand and foot controls); ii) no bending, stooping, kneeling, crouching, crawling, climbing of ramps, stairs, ladders, ropes, or scaffolding; and iii) he must not work at heights, around dangerous or moving equipment, or on uneven or unstable surfaces (Tr. 15).  The ALJ concluded that the claimant was unable to perform his past relevant work, but that there was other relevant work in the economy he could perform, *i. e.*, toll collector and assembler of small products. (Tr. 19).  Thus, the ALJ found that the claimant was not disabled (Tr. 20).

## Review

The claimant contends that the ALJ erred by: 1) failure to find that claimant's impairments of anxiety, sleep apnea, obesity, headaches, hypertension, and oscillopsia were severe impairments at step two; 2) failure to fully develop the record; 3) failing to properly analyze the claimant's RFC at step four; and 4) failure to properly evaluate the

treating physician opinion of Dr. Vicki Sutterfield. The undersigned Magistrate Judge finds the claimant's third contention persuasive.

The record reveals that the claimant began receiving treatment from Dr. Vicki Sutterfield in December 2006 (Tr. 396). The claimant initially presented with complaints of disorientation, feeling unsteady, and pain in his knee and back (Tr. 395). The claimant was referred to the Cooper Clinic Department of Neurology in 2007, which concluded that claimant had severe obstructive sleep apnea, which physicians believed was contributing to his severe headaches (Tr. 256).

State reviewing physician Dr. Luther Woodcock, M.D. completed a Physical Residual Functional Capacity Assessment on February 11, 2009 (Tr. 376-83). Dr. Woodcock found that the claimant had the ability to occasionally lift/carry up to 20 pounds, frequently lift/carry up to 10 pounds, and sit/stand/walk about six hours in an eight-hour workday (Tr. 377). State reviewing physician Dr. Thurma Fiegel, M.D. echoed Dr. Woodcock's findings in May 2009 (Tr. 427-34).

Dr. Sutterfield completed a Medical Assessment of Ability to do Work-Related Activities-Physical on March 24, 2010, in which she opined that claimant could sit, stand, or walk, respectively, for two hours in an eight-hour workday, and that he could only sit, stand, or walk, respectively, for five minutes at a time without interruption (Tr. 445). Further, Dr. Sutterfield wrote that claimant could perform the following job-related functions: i) occasionally lift up to ten pounds and frequently lift up to five pounds; ii) occasionally reach, perform fine manipulation of the hands, perform gross manipulation

of the hands, feel, and push/pull; iii) never perform repetitive motions with his feet and legs; iv) never climb or balance; and v) occasionally squat, kneel, crouch, crawl, bend, twist, and stoop. Finally, Dr. Sutterfield found that claimant should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, fluorescent light, sunlight, fumes, odors, dust, gases, and poorly ventilated areas and avoid even moderate exposure to hazards, moving machinery, and unprotected heights (Tr. 448). Dr. Sutterfield cited cliamant's vertigo, diabetes, chronic pain, and anxiety as the reasons behind her findings (Tr. 445).

Dr. Sutterfield wrote a letter dated September 7, 2010 on claimant's behalf outlining his impairments and treatment (Tr. 228-30). Dr. Sutterfield wrote that claimant's condition had negatively progressed and she was of the opinion that claimant was "disabled" (Tr. 228). Dr. Sutterfield wrote that claimant's diabetes had caused diabetic neuropathy and that claimant had elevated pulmonary pressure and dilation of the right sided chambers of the heart (tr. 228). Dr. Sutterfield opined that claimant's anxiety had "substantially worsened with the decline of his health and the stressors of his claim for disability" (Tr. 229). Dr. Sutterfield noted that the claimant's wife was necessary at his medical appointments because "he has frequently forgotten what has been told regarding medication changes and evaluation" and that he "has also had a noticeable decline in recall[,]" forgetting "even the simplest of events." (Tr. 229). Dr. Sutterfield described the claimant as "very compliant" but stated despite his compliance

with medical treatment, "he has not improved significantly and has actually worsened in various areas." (Tr. 230).

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate

reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ rejected Dr. Sutterfield's opinions because he found that the opinion was not supported by the medical evidence of record, including Dr. Sutterfield's own treatment notes (Tr. 18). But the ALJ's RFC finding reflects that he *did* adopt *some* of Dr. Sutterfield's opinions and stated only that "certain aspects of Dr. Sutterfield's opinion are in fact consistent with the residual functional capacity determined in this decision." (Tr. 18). The problem with the ALJ's analysis of Dr. Sutterfield's treating physician opinions is two-fold. First, the ALJ failed to explain why he was adopting *some* of Dr. Sutterfield's opinions and rejecting the others, which indicates that the ALJ engaged in improper picking and choosing among the medical reports. *See, Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination."). *See, also*, Soc. Sec. R. 96-8p, 1996

8

WL 374184, *7 ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

Second, in reference to Dr. Sutterfield's opinion, the ALJ held that it was not consistent with her own treatment notes and the other medical evidence of record, but curiously stated that "certain aspects of Dr. Sutterfield's opinion are in fact consistent with the residual functional capacity determined in this decision." (Tr. 18). The problem with this statement is that the ALJ is charged with analyzing the medical evidence of record, including conducting an appropriate analysis of Dr. Sutterfield's treating physician opinion in accordance with 20 C.F.R. § 404.1527, and *then* arriving at his RFC formulation, not the other way around. This statement suggests that the ALJ formulated the claimant's RFC at step four and *then* analyzed the medical opinions of record, which is clearly improper.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Sutterfield's opinions. On remand, the ALJ should reconsider Dr. Sutterfield's opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported

by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma